IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DANNY R. MCDANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-0854-CV-W-NKL-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER

Pending before the Court is Plaintiff Danny R. McDaniel's ("McDaniel") Motion for Summary Judgment [Doc. # 4]. McDaniel seeks judicial review of the Commissioner's denial of his requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is not supported by substantial evidence in the record as a whole, the Court reverses the ALJ's decision and remands with instructions to award benefits.

**I.      Medical Records**

---

[1]Portions of the Parties' briefs are adopted without quotation designated.

1

Plaintiff was seen by psychiatrist Tahir Rahman, M.D., on March 22, 2002. (Tr. 210-12.) He had been referred by New Directions for evaluation of depression and anxiety. He gave a history of multiple arrests for both domestic violence and driving while intoxicated. His maternal grandfather, uncle, father, and two brothers were all alcoholics. Plaintiff had drunk six beers that day and admitted that, "I am drinking myself to death." (Tr. 211.) Mental status examination revealed that Plaintiff was disheveled and smelled of alcohol. (Tr. 211.) His mood was assessed as "low," and his affect was "sad/restricted." (Tr. 211.) Plaintiff denied suicidal or homicidal thoughts or plans, as well as delusions, obsessions, hallucinations, compulsions, and phobias. (Tr. 211.) Dr. Rahman diagnosed severe recurrent major depressive disorder, alcohol dependence, and a current Global Assessment of Functioning (GAF) score of 60 with the past year's score being 70. (Tr. 212.) Dr. Rahman prescribed psychotropic medications and asked Plaintiff to consider inpatient detoxification. (Tr. 212.)

On April 12, 2002, Plaintiff saw Dr. Rahman for follow-up and reported that he was "doing better" and was "not crying as much." (Tr. 209.) He admitted that he was still drinking. (Tr. 209.) His mood was "low," but he was alert and cooperative with no suicidal ideation. (Tr. 209.) Plaintiff reported that he was sleeping okay. (Tr. 209.) On May 24, 2002, Dr. Rahman noted that Plaintiff was still drinking heavily. (Tr. 209.) His mood was "so-so," his sleep was variable, and his energy was low. (Tr. 209.) He was alert and oriented, but because Plaintiff was not ready to stop drinking, Dr. Rahman

indicated that he had a poor prognosis. (Tr. 209.) His medications were continued. (Tr. 209.)

On May 27, 2002, Plaintiff went to North Kansas City Hospital's Emergency Room claiming he was "suicidal and I want to check myself into detox." (Tr. 183.) He did not stay long enough to be seen. (Tr. 180.) Plaintiff returned to the same Emergency Room on May 29, 2002, stating that he had suffered an anxiety attack on May 27, and that he returned home and took 12 Valium hoping he would not wake up. (Tr. 177.) Although he was cleared for inpatient admission, Plaintiff refused because he would be unable to smoke, so he again left without treatment. (Tr. 165-77.) On May 31, 2002, Dr. Rahman reported these encounters and concluded that Plaintiff had poor insight and was at "chronic high risk for self-destructive behaviors including suicide, liver damage, overdose, intoxication, etc." Rahman again encouraged inpatient treatment. (Tr. 208.)

On June 3, 2002, Plaintiff was brought to North Kansas City Hospital by the police in response to a report from Plaintiff's stepdaughter that he was suicidal. Plaintiff denied that he had attempted suicide that night ("If I was gonna do it, I would have done it last week."). (Tr. 157.) Plaintiff was discharged with instructions to see Dr. Rahman as an outpatient the next day. (Tr. 152.) It appears from the Record, however, that Plaintiff did not see Dr. Rahman again for six months.

On January 31, 2003, Dr. Rahman reported that Plaintiff was still drinking alcohol. (Tr. 208.) His mood was noted as "anxious," but there was no evidence of suicidal

ideation, homicidal ideation, or psychosis. (Tr. 208.) Plaintiff refused to stop drinking or take Dr. Rahman's advice for inpatient detoxification. (Tr. 208.) Dr. Rahman noted that Plaintiff was exhibiting manic symptoms and prescribed medication to address those symptoms. (Tr. 208.) By February 11, 2003, Plaintiff reported he was "doing better" and that his current medications were "better than anything I have taken." (Tr. 207.) Plaintiff admitted that he had heard voices at night in the past, but that was better now. (Tr. 207.) Plaintiff's mood was noted to be "good," and his medications were continued. (Tr. 207.)

By March 18, 2003, Plaintiff reported improvement, but still complained of his mood being "up and down." He had cut down his drinking to once a week and was no longer having hallucinations or suicidal ideations. Dr. Rahman noted that he was "much improved" and exhibited full affect. Dr. Rahman increased his dosage of lithium. (Tr. 240.) By April 15, 2003, Plaintiff reported doing "okay," his sleep was "okay" and appetite was good. He had been sober for one month. Dr. Rahman increased his dosage of lithium again and added the anticonvulsant Lamictal. (Tr. 239.) Plaintiff was seen May 13, 2003, for follow up. He complained of feeling a little depressed. He was pacing the floor. His sleep was excessive at times. Dr. Rahman increased his dosage of Lamictal.

As of June 20, 2003, Plaintiff was still sober but continued to complain of depression at times. His mood was still cycling. He was sleeping too much and "tired all the time." Some days he felt "hyper." He reported occasional auditory hallucinations that were better with Zyprexa. Dr. Rahman increased his dosage of Lamictal yet again.

4

(Tr. 238.) On September 19, 2003, Plaintiff was still "kind of moody." His mood was more often low than good. His sleep and appetite were okay. He had some mild tremors but this had improved. He had been sober for five months. Dr. Rahman increased his dosage of Zyprexa. (Tr. 238.)

Plaintiff was seen December 12, 2003, for follow up. He was doing "okay." His divorce had been finalized six weeks prior. He reported a lot of anxiety. Racing thoughts and "mixed states" were common. He continued to have minor tremors with lithium. He had been sober 8-9 months and reported himself as a 7-8 on a ten point scale. Dr. Rahman increased his dosage of Lamictal. (Tr. 237.)

On March 16, 2004, Plaintiff reported getting depressed easily. He "gets hyper and then has no energy." He had excessive sleep and napped during the day. On May 29, Plaintiff reported doing well though a little depressed, but his affect was full and he was alert and cooperative. He had had one year of sobriety. (Tr. 236.) When he saw Dr. Rahman again on August 27, 2004, Plaintiff reported having stopped taking both the Lamictal and Prozac at the increased dosages. He was doing okay, though his mood was variable, he complained of "trouble feeling," his energy was low and appetite too high, and he had racing thoughts and distractibility. Dr. Rahman restarted Lamictal with a starter pack and substituted Lexapro for Prozac. (Tr. 245.)

**II.     Discussion**

    **A.     Standard of Review**

5

Review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The Eighth Circuit has stated that the court defers "heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

**B.      Discussion**

The ALJ dismissed Dr. Rahman's June 18, 2004, Mental Residual Functional Capacity Assessment without sufficient explanation. In that assessment, Dr. Rahman concluded that Plaintiff was markedly limited in his abilities to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others. Dr. Rahman further stated that Plaintiff was extremely limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday

and workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. (Tr. 241-242.) Based on Dr. Rahman's evaluation, the Vocational Expert testified that Plaintiff's emotional and social impairments would preclude all employment in the national economy. (Tr. 57-59).

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). Additionally, "the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). In the present case, there is no expert testimony contradicting Dr. Rahman's evaluation of the Plaintiff. Indeed, there is no other medical expert testimony in the record. The ALJ's only explanation for rejecting Dr. Rahman's Mental Residual Functional Capacity Assessment was that his treatment notes indicated on multiple occasions that Plaintiff was improving. The fact that a patient is no longer suicidal is not substantial evidence that he is able to work eight hours a day, five days a week.

Plaintiff has made considerable progress under Dr. Rahman's care and has been sober for over a year. Even so, the record clearly shows that he remains severely impaired, both emotionally and socially, and is incapable of performing work available in the national economy. The ALJ's reason for according little weight to Dr. Rahman's evaluation is not supported by substantial evidence in the record, nor is his finding that Plaintiff is not presently disabled.

7

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 4] is GRANTED. The decision of the Commissioner is REVERSED and REMANDED with instruction to award benefits..

                                                 s/ Nanette K. Laughrey
                                                 NANETTE K. LAUGHREY
                                                 United States District Judge

Dated : May 16, 2006
Jefferson City, Missouri